UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CANDIS THOMAS,

    Plaintiff,

v.

HOLY CROSS SERVICES, INC.,

    Defendant.

_____/

Case No. 2:23-cv-12843

Honorable Susan K. DeClercq
United States District Judge

**ORDER GRANTING DEFENDANT'S MOTION TO
ENFORCE SETTLEMENT AND DISMISS CASE (ECF. No. 12)**

This matter is before the Court on Defendant Holy Cross Services' motion to enforce the parties' settlement agreement and dismiss this case. ECF No. 12.

**I.**

Plaintiff, Former Holy Cross employee Candis Thomas, filed suit against Defendant alleging that she was subjected to race discrimination violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2. ECF No. 1. The parties participated in an early mediation with Kathleen L. Bogas on Friday, April 19, 2024, which resulted in a mediator's proposal that Holy Cross pay Thomas $125,000 in settlement of her claim. ECF No. 12-4 at PageID.120. Thomas was given the weekend to consider the proposal. On Monday, April 22, 2024, Thomas's lawyer sent an email to Holy Cross's lawyer indicating that the mediator's proposal was accepted. ECF No. 12-2 at PageID.114. The same day, the mediator sent

correspondence to the parties' counsel stating that both parties had accepted the proposal and attached a "Mediation Agreement" outlining the parties' agreement. ECF No. 12-3 at PageID.116–17.

The terms of the Mediation Agreement stated that Holy Cross would pay $125,000 in three installments, Holy Cross's counsel would draft a settlement agreement and release which would include "standard terms," Plaintiff would sign the settlement agreement and full release of any and all claims, and the parties would then enter into a stipulation for dismissal with prejudice to be submitted to this Court. ECF No. 12-4 at PageID.120. The Agreement further provided that Thomas would not be eligible for rehire by Holy Cross, that she would keep the settlement terms confidential, and that she would not disparage Holy Cross. *Id.* Upon inquiry, Holy Cross would provide only the dates Thomas worked and the position she held. *Id.* Finally, the Agreement stated that if the parties are unable to agree on language in the settlement agreement, they may contact the mediator for assistance. *Id.* at PageID.121.

Upon receiving the Mediation Agreement, the attorney for Holy Cross agreed that the terms of the Agreement "are accurate," but noted an error in the dates for the installment payments, specifically that "each of the references to 2023. . . should be 2024." ECF No. 12-3 at PageID.116. Holy Cross's attorney further asked Thomas's

attorney to "please confirm your agreement with the term sheet and my noted exception [about the dates]." *Id.* Thomas's attorney responded, "Yes." *Id.*

The parties thereafter began working on a final settlement agreement and as part of that, discussed the inclusion of additional settlement terms, none of which conflicted with those contained in the Mediation Agreement. *See* ECF No. 12-5 at PageID.123. Yet when presented with the settlement agreement, on May 14, 2024, Thomas's counsel sent an email indicating Thomas wanted to back out of the settlement, stating:

> [Thomas] will not agree. The time between the facilitation and now has done damage. Let's get depositions on the calendar. The mediator proposal was not adequately explained to [Thomas]—it was unorthodox. [Thomas] can agree to go back to [mediation] but the defense would have to pay for that.

ECF No. 12-6 at PageID.126.

## II.

The Sixth Circuit has long recognized that district courts have inherent authority to enforce agreements to settle in pending litigation. *Jaynes v. Austin*, 20 F. App'x 421, 424 (6th Cir. 2001); *Kukla v. Nat'l Distillers Prods. Co.*, 483 F.2d 619, 621 (6th Cir. 1973). Before entry of judgment or dismissal, no separate basis for jurisdiction is required to enforce the settlement agreement. *Jaynes*, 20 F. App'x at 423. A settlement agreement may be enforced where the parties have reached an agreement on its material terms, regardless of whether a final settlement agreement

has been reduced to writing. *Brock v. Schuener Corp.*, 841 F.2d 151, 154 (6th Cir. 1988). Further, trial courts may enforce a settlement agreement "even where the agreement has not been arrived at in the presence of the court nor reduced to writing." *Kukla*, 483 F.2d at 621. Whether the parties have reached such an agreement is a question of fact to be decided by the district court. *Moore v. U.S. Postal Serv.*, 369 F. App'x 712, 717 (6th Cir. 2010) (citing *RE/MAX*, 271 F.3d at 645–46). "[N]o evidentiary hearing is required," and "summary enforcement of a settlement agreement has been deemed appropriate where no substantial dispute exists regarding the entry into and terms of an agreement." *RE/MAX*, 271 F.3d at 646.

### III.

### A. The Agreement is Valid

Because a settlement agreement is a type of contract governed by contract law, "whether a settlement agreement is a valid contract between the parties is determined by reference to state substantive law governing contracts generally." *Remark LLC v. Adell Broad.*, 817 F. Supp. 2d 990, 1001 (E.D. Mich. 2011) (quoting *Bamerilease Cap. Corp. v. Nearburg*, 958 F.2d 150, 152 (6th Cir. 1992)). Michigan law in turn provides that, "[b]efore a contract can be completed, there must be an offer, acceptance, consideration, and a meeting of the minds on all essential terms." *Remark*, 817 F. Supp. 2d at 1001 (citing *Kloian v. Domino's Pizza, LLC*, 733 N.W.2d

766, 770 (Mich. Ct. App. 2006)). The essential terms of a settlement agreement are payment in exchange for a release of claims and a dismissal of the case. *Kloian*, 733 N.W.2d at 771("There clearly was a meeting of the minds on the essential terms of the agreement. The essential terms were the payment of $48,000 by defendant in exchange for a dismissal with prejudice and a release"). A "meeting of the minds is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind." *Id.* (quoting *Kamalnath v. Mercy Mem. Hosp. Corp.*, 487 N.W.2d 499, 503 (Mich. Ct. App. 1992)).

Here, there is no dispute that the parties participated in an early mediation on Friday, April 19, 2024, that resulted in a mediator's proposal that Holy Cross pay Thomas $125,000 in settlement of her claims. It is also undisputed that after Thomas had time to consider the proposal over the weekend, her attorney sent an email on Monday, April 22, 2024, stating that they accepted the mediator's proposal. In Michigan, attorneys are considered to have the apparent authority to settle lawsuits on behalf of their clients, and opposing parties have the right to rely upon the existence of such settlements when agreed to by attorneys. *See Capital Dredge & Dock Corp. v. City of Detroit*, 800 F.2d 525, 530–31 (6th Cir. 1986) (applying Michigan law). Accordingly, there was an offer, acceptance, and consideration. *Remark*, 817 F. Supp. at 1001–02 (citation omitted) ("Consideration is a bargained

for exchange involving a benefit on one side, or a detriment suffered, or service done on the other.")

Although Thomas contends that an "additional dispute" arose as the parties drafted the terms of the final settlement agreement, she does not articulate any details of this purported dispute, nor provide any evidence of it. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones.") (cleaned up). And simply because there may have been a typographical error in the mediator's proposal, that error related to a non-material term—the dates for the installment payments of the agreed-upon total settlement amount. Thus, there was a meeting of the minds on "all the essential terms. . . and all that remained was to sort out the non-material details and put the agreement in writing." *RE/MAX Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633, 646 (6th Cir. 2001). Accordingly, the Mediation Agreement is valid.

### B. The Agreement is Final

Having found that Thomas entered into a valid contract, Michigan law is clear that a settlement agreement between parties is "final and cannot be modified." *Smith v. Smith*, 823 N.W.2d 114, 116 (Mich. Ct. App. 2011). Most importantly to this case, it cannot be avoided merely because one party "has had a 'change of heart.'" *Vittiglio*

*v. Vittiglio*, 824 N.W.2d 591, 595 (Mich. Ct. App. 2012). Here, it appears that as more time passed between the mediation and the final settlement agreement being drafted, Thomas simply changed her mind. *See* ECF No. 12-6 at PageID.126 ("[Thomas] will not agree. The time between the facilitation and now has done damage."). Unfortunately, this change of heart is not an allowable basis for Thomas to back out of a valid settlement agreement.

Nor is Thomas's claim that she did not understand the Mediation Agreement a defense to enforcement of the settlement. *See Palmondon v. Palmondon*, 583 N.W.2d 245, 246 (Mich. Ct. App. 1998) (holding that, in Michigan, plaintiffs are bound by agreements "absent a showing of mistake, fraud, or unconscionable advantage"); *see also Farm Bureau Mut. Ins. Co. of Mich. v. Buckallew*, 690 N.W.2d 93, 93 (Mich. 2004) (mem.) (ignorance of or a mistake in understanding an agreed-upon contract is not a basis for relief from the same, and a party is not "excused by its own carelessness or lack of due diligence"). Thus, the Mediation Agreement is final and this Court will enforce it.

IV.

For the reasons stated above, Defendant's Motion to Enforce Settlement is **GRANTED**. Thomas is **ORDERED** to abide by the terms of the Mediation Agreement, which includes signing the final settlement agreement and release.

Further, this case is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED**.

                                                                    */s/Susan K. DeClercq*
                                                                    SUSAN K. DeCLERCQ
                                                                    United States District Judge

Dated:  11/14/2024